Per Curiam.

The defendant vigorously contends first that its driver, concerning whose employment there is no controversy, was not acting within the scope of his employment at the time of the accident. That there had been a deviation from his master’s business in the earlier hours during which the driver and his female companion moved from bar to bar and while he was proceeding into the state of inebriation in which he was found at the time of the crash cannot be seriously denied. However, in its charge to the jury, the trial court accurately stated the law with reference to such deviation, and the jury by its verdict found that if such a deviation had occurred it had been terminated and the master-servant relationship thereby re-established.
On the issue of whether the driver of defendant’s truck was acting within the scope of his employment at the time of the accident, the Court of Appeals, in its opinion, made the following statement:
“The evidence clearly establishes that the driver of defendant’s truck was acting within the course and scope of his employment at the time of the collision, and that the driver of *187 the defendant’s truck was negligent, and that this negligence was the approximate cause of the collision and the resulting damage. ’ ’
We find no justification for disturbing the findings of the courts below as to the existence of the master-servant relationship at the time of the collision.
The defendant contends next that the amounts of the verdict as to both causes of action are excessive. With reference to that allowed on account of the pain and suffering of the plaintiff’s decedent, it argues that plaintiff is entitled at most to nominal damages because of the short period of time intervening between the accident and death and because the decedent remained unconscious during that interval.
The testimony of a number of witnesses bears on the capacity of the plaintiff’s decedent to experience pain and suffering in the interval prior to death. A physician testified that when he first saw him in the emergency room at the hospital “he seemed to respond to painful stimuli as movements of the head or neck and also on his lacerations and he was unconscious or semi and in deep shock.” He testified further that hypodermic injections “ resulted in either movements of the patient or sometimes a sound from the patient — as moaning.” Decedent’s father (the plaintiff) testified that “I heard him groan as I approached the emergency room in that little hallway. I recognized him — his voice.” He testified further as follows:
“Q. Did you talk to him? A. Well, I tried to call him.
“Q. Will you describe how you called him? A. Well, I took hold of his shoulder and held his hand and right shoulder and said ‘Chauncy.’
“Q. Did he respond to your call? A. Well, he would start groaning and tried to swallow a couple times and I would call him again — just shake him a little bit — took hold of him.
“Q. Did he respond in any way? A. Well, he would stop groaning and he would kind of stiffen up and bring up his right ieg.
‘‘ Q. Did he respond in any way other than by attempting to throw or move his leg? A. Well, he tried to raise up when you would talk to him. Naturally, I talked to him in a louder tone of voice than normal to try to make him understand and he *188 would kind of raise up and stop his groaning and then go back groaning.
“Q. Did you have hold of his hand at that time? A. Oh, yes. Oh, yes.
“Q. Did you get from holding his hand any responses in any way? A. I gripped his hand on a couple occasions and he gripped back. He would grip my hand right after I would call to him — he would grip my hand.”
The driver of the ambulance which took plaintiff’s decedent to the hospital testified: “When I went to move him out of the car, one of the men I picked up along the way to help me — we would move his leg a little and he was in such a position he seemed to be in pain and groaning and so I got the wrecker to pull the car further apart — pull the windshield which seemed to wrap around them [the other occupant of the car was killed outright] — and pulled it apart to take him out without causing him too much pain.”
He testified further that the decedent made “large loud groans” and “we could see he was obviously in pain.”
The attendant on the ambulance testified that when they arrived at the scene the plaintiff’s decedent “was threshing around throwing his arm and legs” and testified further as follows:
“A. * * * I tried to tell him to relax and calm down and not keep fighting.
“Q. Did that have any effect on him? A. Not right then. It seemed like he tried to but every once in a while, the pain must have been so great, he would fight and throw his arm. When we got the car pulled apart, I hollered at him firmly, ‘Chauncy, you are going to have to relax and quit fighting or we can’t get you out of here.’
“Q. And then what happened? A. Immediately he calmed down, just like I told him.
“Q. He did respond to your command? A. Yes.
“Q. Did you get out — did you get him out shortly after that? A. Yes. When we went to pick him up, the first movement like we make to somebody like that — when we picked him up, he let out an awful groan and straightened right up like the *189 pain was so great he couldn’t help himself but — well, he didn’t do anything — any fighting — throw his arms or make like he was—
“Q. Did you ride in the ambulance with him to the hospital? A. Yes.
“Q. And how was his behavior at that time? A. Well, he kept groaning all the time and moving his right leg and after we got in the ambulance his right leg and right arm, he would keep fighting like — I don’t know why he done it but he kept throwing his right arm.”
In support of its contention that the plaintiff is not entitled to recover on the first cause of action, defendant cites the rule of law set forth in 25 Corpus Juris Secundum, 548, Section 62, as follows:
“Physical or.bodily pain and suffering in consequence of a wrong occasioning an injury to the person is a proper element of damages, but allowance can be made only for pain and suffering of which the injured person is conscious, and damages for pain during the time that the injured person is unconscious are not allowable.”
It is similarly stated in 16 Ohio Jurisprudence (2d), 180, Section 49, that “since one cannot experience pain and suffering while unconscious no recovery can be had for pain and suffering endured by one fatally injured by the negligence of another if the injured person is rendered unconscious at the instant of the injury and dies of such injuries without ever having regained consciousness.” This text cites the supporting case of Lorain Times-Herald Co. v. Del Boccio, Admr., 15 Ohio Law Abs., 735, decided by the Court of Appeals for Lorain County and which is distinguishable from the present case in that, as stated by the Court of Appeals there, the record disclosed that the decedent was unconscious from the time of his injury until his death.
We are not here required to pass upon the negative of the proposition since there is in the record before us, as indicated by the portions hereinabove quoted, affirmative evidence tending to show that the decedent was not completely unconscious during the interval between the accident and death, and that he was therefore capable of experiencing pain and suffering. By *190 its verdict, the jury found that the plaintiff’s decedent did in fact experience pain and suffering.
Of all the items of compensatory damages which it may become the duty of a court or jury to assess, that which will compensate for human pain and suffering is perhaps the most difficult to determine. Such determination is susceptible of no mathematical or rule of thumb computation, and no substitute for simple human evaluation has been authoritatively suggested. In this case we cannot say as a matter of law that the amount determined by the jury to be reasonable compensation for the pain and suffering which it found to have been suffered is unreasonable.
If the item of damages most difficult to satisfactorily assess in the compensatory-damage area is that for pain and suffering, probably the second most difficult of satisfactory determination is that for wrongful death. This, of course, provides the basis for the next complaint of the defendant.
The plaintiff’s decedent lacked being 18 and one half years of age by one day at the time of his death. He was single and lived at home with his father and mother. Like his father, by whom he had been trained in his craft and trade, he was a watchmaker and jewelry store operator. They operated separate establishments in neighboring communities, and the father handled the overflow watch repair work from the son’s establishment, the latter having more than he could do himself. As a further benefit to the father, the dual operation made possible advantageous purchases of items bought for resale, the increased volume of purchases resulting in a lower wholesale purchase price. Further proper elements in this record for consideration in determining compensatory damages are the loss by his death of any chance of future support by the decedent of his mother and father, the age. sex and physical and mental condition of the decedent, and the position in life, occupation and physical condition of the parents (Immel, Admr., v. Richards, 154 Ohio St.. 52, 93 N. E. [2d], 474). Section 2125.02, Revised Code, after providing for the bringing of a wrongful death action by the personal representative of the deceased for the exclusive benefit of his next of kin, provides that “the jury may give such damages as it thinks proportioned to the pecuniary injury re- *191 suiting from such death to the persons, respectively, for whose benefit the action was brought.” The jury had before it all pertinent facts, and, again, we find no justification for holding that as a matter of law the amount of damages assessed as to the second cause of action is excessive.
The remaining contention of the defendant is that in its charge to the jury the court was guilty not only of errors of omission but also of errors of commission, which were reached by its general exception. We have carefully considered the charge and have reached the conclusion that it contains no error prejudicial to the defendant.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Matthias, Bell and Peck, JJ., concur.